# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | **No. 08-20106-03-KHV** |
| v. | ) | |
| | ) | **CIVIL ACTION** |
| JOSE VIERA, | ) | **No. 10-2594-KHV** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On April 22, 2009, defendant pled guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, two counts of distribution of five grams or more of methamphetamine and one count of use of a communication facility to facilitate the distribution of methamphetamine.   On December 8, 2009, the Court sentenced defendant to 324 months in prison.  This matter is before the Court on defendant's <u>Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody</u> (Doc. #172) filed October 29, 2010.  For reasons stated below, the Court overrules defendant's motion.

## Analysis

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  <u>See</u> <u>Klein v. United States</u>, 880 F.2d 250, 253 (10th Cir. 1989).  To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974).

Liberally construed, defendant's Section 2255 motion asserts that his first attorney, John Duma, was ineffective because he did not inform defendant that (1) he would be deported as a collateral consequence of his conviction and (2) as a deportable alien, he would not be eligible for

a reduction in his sentence upon completion of the Residential Drug Abuse Program ("RDAP").  See Motion Under 28 U.S.C. § 2255 (Doc. #172) at 4; Memorandum Of Facts And Law In Support Of Motion To Vacate, Set Aside, Or Correct Sentence (Doc. #173) filed October 29, 2010 at 2. Defendant also asserts that his second attorney, Alex McCauley, was ineffective because (1) he did not file a motion to withdraw the guilty plea before sentencing and (2) he did not file an appeal as instructed.  See Motion Under 28 U.S.C. § 2255 (Doc. #172) at 5.[1]

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness."  United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988), cert. denied, 489 U.S. 1089

---

[1]      In the plea agreement, defendant waived any right to collaterally attack any matter in connection with the prosecution, his conviction or sentence except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001).  See Plea Agreement ¶ 10, attached to Petition To Enter Plea of Guilty And Order Entering Plea (Doc. #92) filed April 22, 2009.  On April 13, 2011, the Court overruled the government's motion to enforce the waiver of collateral attacks as to defendant's first three claims and deferred ruling on the issue as to defendant's claim that Mr. McCauley was ineffective because he did not file an appeal as instructed.  See Memorandum And Order (Doc. #180) at 4.

(1989).  As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

**I.      Failure To Inform Defendant That He Would Be Deported**

Defendant, who is a citizen of Mexico and an illegal immigrant to the United States, argues that Mr. Duma was ineffective because he did not tell defendant that as a collateral consequence of his conviction, he would be deported.  See Memorandum (Doc. #173) at 4-5.  Counsel renders deficient performance if he fails to advise a noncitizen client that a plea of guilty carries a risk of deportation.  See Padilla v. Kentucky, 130 S. Ct. 1473, 1486 (2010).  In an affidavit, Mr. Duma states that he does not recall precisely what he told defendant about deportation, but he believes that he told defendant that he would be deported.  In contrast, defendant states that Mr. Duma never informed him that deportation was a collateral consequence of his guilty plea.  See Jose Viera Declaration Dated October 25, 2010 at 2, attached to Memorandum (Doc. #173).  The Court need not resolve this factual dispute, however, because defendant cannot establish prejudice.

To show prejudice in the guilty plea context, defendant must show a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); Miller v. Champion, 262 F.3d 1066, 1068-69 (10th Cir. 2001).  As part of his proof, defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla, 130 S. Ct. at 1485 (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)).  Defendant asserts that he suffered prejudice because had he known that he would be deported as a result of his conviction, he would not have entered a plea of guilty and would have

insisted on going to trial.  See Memorandum (Doc. #173) at 5.  Defendant's mere assertion that he

would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient

to entitle him to relief.  Miller, 262 F.3d at 1072; United States v. Gordon, 4 F.3d 1567, 1571 (10th

Cir. 1993).  Instead, the Court evaluates the factual circumstances surrounding the plea to predict

"whether the outcome of the district court proceedings would have been different if his counsel had

not committed the alleged errors." Clingman, 288 F.3d at 1186; see Miller, 262 F.3d at 1072 (court

examines factual circumstances surrounding plea to determine whether petitioner would have

proceeded to trial).  While defendant need not show that he would have prevailed at trial, his

prospects of succeeding inform the Court's view whether he in fact would have gone to trial absent

the alleged errors.  United States v. Triplett, 263 Fed. Appx. 688, 690 (10th Cir. 2008); see

Clingman, 288 F.3d at 1186.  The strength of the government's case is often the best evidence of

whether defendant in fact would have changed his plea and insisted on going to trial.  See Hill, 474

U.S. at 59-60.

Defendant does not state that he would have likely prevailed at trial and the record does not

reflect any viable defense against the charges.  As part of the plea, defendant acknowledged that

Jesse Valdez, an undercover sheriff's deputy, purchased 50.5 grams of methamphetamine from

defendant on August 13 and 20, 2008.[2]  See Defendant Jose Viera's Proposed Factual Basis For Plea

Of Guilty, attached as Exhibit A to the Petition To Enter Plea (Doc. #92).  In addition, defendant

---

[2]        On August 13, 2008, Deputy Valdez purchased 27.6 net grams of 50.9% pure
methamphetamine from defendant for $900.  Defendant told Deputy Valdez that the price would be
better if he purchased two to four ounces.  On August 25, 2008, Deputy Valdez purchased 112.2 net
grams of 32.6% pure methamphetamine from defendant for $3,600.  In the transaction on August 25,
2008, defendant drove another individual who actually conducted the exchange of money and
methamphetamine, but defendant arranged the transaction with Deputy Valdez by telephone and
defendant confirmed the price with Deputy Valdez during the exchange.

admitted that on September 18, 2008, he told Deputy Valdez that he would check with his friends about selling one additional pound of methamphetamine for $11,000.  See id.  Finally, defendant's girlfriend, Perla Flores, appeared willing to testify against him.[3]  In light of this evidence, which is not impacted in any degree by Mr. Duma's alleged lack of advice about deportation, defendant simply states that he would have proceeded to trial if he had known that he would be deported.

Defendant's conclusory claim, though supported by his sworn statement, is insufficient to show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S. Ct. at 1485; see Banos v. United States, No. 10-23314, 2011 WL 835789, at *3 (S.D. Fla. Mar. 4, 2011) (no prejudice from alleged lack of discussion about deportation because defendant never claimed innocence of crimes charged, or offered potentially meritorious defense); Agyepong v. United States, No. 07-cr-178-2, 2011 WL 627361, at *4 (M.D.N.C. Feb. 11, 2011) (given evidence against him and lack of remotely credible innocent explanation, no rational defendant would have proceeded to trial).

Defendant does not expressly state that the fact of deportation was material to his decision to plead guilty and in any event, the record shows otherwise.  During a presentence interview, defendant acknowledged that when he is released, "he plans to return to Mexico and live with his family." PSIR (Doc. #109) ¶ 76.[4]  At sentencing, Mr. McCauley represented that defendant is going to be deported after his incarceration and that "he has no intention of coming back."  Transcript Of

---

[3]     Flores admitted that she translated for defendant in setting up and conducting numerous drug transactions.  She also acknowledged that she helped buy "cut" to mix with methamphetamine which defendant sold.  Flores estimated that defendant sold some 18.14 kilograms of methamphetamine between September of 2007 and December of 2008.  See PSIR (Doc. #109) ¶ 45.

[4]     Flores, the mother of defendant's two children, also stated that she plans to return to Mexico.  See PSIR [Of Perla Flores] (Doc. #151) ¶ 67.

Sentencing at 71.  At sentencing, defendant also asked the Court to consider the fact that he "will

never come back to the United States."  Id. at 75.  Defendant does not explain how his deportation

was material in light of the fact that he planned to return to Mexico and to never return to the United

States.  See Limones v. United States, No. 07-cr-356-5-TWT, 2011 WL 1157371, at *5 (N.D. Ga.

Mar. 29, 2011) (self-serving statement that defendant would have rejected plea agreement had he

been informed that he would be deported to Mexico, where he already planned on returning,

completely unbelievable; decision to proceed to trial would have been entirely irrational).

Defendant also cannot establish prejudice because he significantly delayed seeking to vacate

his plea until after the Court imposed a sentence of 324 months in prison.  In the context of a motion

to withdraw a guilty plea before sentencing, the Court considers whether defendant delayed in filing

the motion.[5]  Indeed, delays of three months or more tend to suggest manipulation by a defendant.

See Carr, 80 F.3d at 420 (delay of three months); Vidakovich, 911 F.2d at 439 (delay of five

months).  The District of Columbia Circuit has noted as follows:

> Even where the plea was properly entered . . ., the standard for judging the movant's
> reasons for delay remains low where the motion comes only a day or so after the plea
> was entered. . . .  A swift change of heart is itself strong indication that the plea was
> entered in haste and confusion; furthermore, withdrawal shortly after the event will
> rarely prejudice the Government's legitimate interests.  By contrast, if the defendant
> has long delayed his withdrawal motion, and has had the full benefit of competent
> counsel at all times, the reasons given to support withdrawal must have more force.

---

[5]      See United States v. Killingsworth, 117 F.3d 1159, 1162 (10th Cir.), cert denied, 522
U.S. 961 (1997); Gordon, 4 F.3d at 1572.  Delay in filing a motion to withdraw a guilty plea weighs
against granting defendant's motion.  See United States v. Carr, 80 F.3d 413, 420 (10th Cir.1996)
(three months); United States v. Vidakovich, 911 F.2d 435, 439-40 (10th Cir. 1990) (five months);
United States v. Gibson, 176 F.3d 489, 1999 WL 298181, at *2 (10th Cir. 1999) (Table) (three
months); United States v. Rower, 80 F. Supp.2d 1212, 1219 (D. Kan. 1999) (eight weeks), aff'd, 18
Fed. Appx. 702 (10th Cir. 2001); see also United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir.
1999) (three-month delay in filing motion to withdraw plea weighed decisively against defendant
where he filed motion one day before sentencing).

United States v. Barker, 514 F.2d 208, 222 (D.C. Cir.), cert. denied, 421 U.S. 1013 (1975).

From a review of the record, it is readily apparent that defendant's request to withdraw his guilty plea – 18 months after his plea – is motivated by dissatisfaction with the length of his sentence, not any misunderstanding about the prospect of deportation 324 months later.  Defendant insists that the Court never informed him that he would be deported.  See Jose Viera Declaration Dated October 25, 2010 at 2, attached to Memorandum (Doc. #173).  At the change of plea hearing, however, the Court informed defendant that as a result of his conviction, he would be deported and that in the future, he might be excluded from admission to the country and denied naturalization privileges.[6]  After being so advised, defendant stated without qualification, that he wanted to plead guilty.  See Transcript Of Change Of Plea Hearing at 13; Martinez-Fierro v. United States, 2011 WL 1528468, at *4 (S.D. Tex. Apr. 20, 2011) (no prejudice because court warned defendant during plea

---

[6]      In particular, the Court advised defendant as follows:

THE COURT:  Are you an American citizen?

THE INTERPRETER: No.

THE COURT:  Of what country are you a citizen?

THE INTERPRETER: Mexico.

THE COURT:  You understand that a conviction in this case will cause you to be deported?

THE INTERPRETER: Yes.

THE COURT:  And in the future, you may be excluded from admission and denied naturalization privileges?

THE INTERPRETER: Yes.

Transcript Of Change Of Plea Hearing at 12-13.

-7-

colloquy that after term of imprisonment he would likely be deported or removed).

In his reply brief, defendant asserts that during an off-the-record discussion at the change of plea hearing, he asked Mr. Duma whether he would be deported and Mr. Duma told him that he would not be deported. The record reflects that after the government outlined the terms of the plea agreement, defendant and Mr. Duma had an off-the-record discussion. Immediately after such discussion, however, defendant confirmed that he talk to Mr. Duma about the dates of the substantive charges in relation to the dates of the conspiracy.[7] Defendant cannot now reasonably

---

[7]       The context of the off-the-record discussion is as follows:

THE COURT: Would you like some more time to talk with your attorney about the Plea Agreement?

THE INTERPRETER: Yes.

THE COURT: Okay.

(An off-the-record discussion was had between the defendant and the attorney)

MR. DUMA: Your Honor, I will advise the record that there was a discussion – the date – the inclusive dates within the conspiracy count, my client was just momentarily confused as to how that related to his substantive counts of August 13th, August 25th, and September 18th. That cleared now, I don't think there's any problem with moving forward.

THE COURT: Do you agree, sir?

THE INTERPRETER: Yes.

THE COURT: Do you have any other questions about the Plea Agreement?

THE INTERPRETER: No.

THE COURT: And have you had plenty of time to read that agreement and discuss it with your lawyer?

THE INTERPRETER: Yes.

(continued...)

-8-

assert that during the discussion, his attorney made certain promises about deportation.  Defendant

maintains that his version of the off-the-record discussion is supported by the fact that the Court

gave conflicting statements on the issue: first that defendant would not be deported and then later

that defendant would be deported.  The Court's first statement on the issue involved the timing of

deportation relative to the term of supervised release – not the fact of deportation.[8]  More

specifically, the Court informed defendant that he would be deported and that if deportation did not

---

[7](...continued)
THE COURT:  And does that written document include all of your agreement with
the government?

THE INTERPRETER: Yes.

THE COURT:  So in other words, you don't have any side agreements or verbal
agreements that you are counting on.

THE INTERPRETER: No.

Transcript Of Change Of Plea Hearing at 26-27.

[8]        At the plea colloquy, the Court addressed the issue of supervised release as follows:

THE COURT:  And do you know what supervised release is?

THE INTERPRETER: Yes.

THE COURT:  What's your understanding about that?

THE INTERPRETER: To be released, but it's like being on probation, something
like that.

THE COURT:  Very similar to probation.  You would have to – this would be after
you're released from prison, and if you're not *immediately* deported, then you would
report to a probation officer and have to follow all kinds of rules and conditions if
you want to stay out of prison.

THE INTERPRETER: Yes.

Transcript Of Change Of Plea Hearing at 10-11 (emphasis added).

occur *immediately* after incarceration, defendant would be placed on supervised release for a period of time.

Finally, defendant argues that shortly after sentencing, at a meeting with Mr. McCauley, he first learned that he would be deported as a collateral consequence of his guilty plea.[9]  Defendant ignores the fact that in the memorandum filed one week before sentencing, Mr. McCauley asked the Court to consider "the fact [defendant] will be deported after incarceration."  Sentencing Memorandum (Doc. #136) filed December 1, 2009 at 5.  At sentencing, Mr. McCauley again asked the Court to consider that defendant "is going to be deported once he's done" with his prison term.  Transcript Of Sentencing at 71.  Likewise, the Court noted that because defendant was here unlawfully, he would be surrendered to a duly authorized immigration official for deportation after he has served his sentence.  See id. at 78.  In addition, some six months before sentencing, the presentence investigation report noted that upon completion of a term of imprisonment, defendant would surrender to a duly authorized immigration official for deportation according to procedures provided by the Immigration and Naturalization Act, 8 U.S.C. §§ 1101-1524.  PSIR (Doc. #109) ¶¶ 94, 99.

In the plea petition, defendant also recognized that "I have been advised and understand that if I am not a U.S. citizen, a conviction of a criminal offense may result in deportation from the

---

[9]      In his declaration, defendant states as follows:

> Shortly after the sentencing hearing, Attorney McCauley met with me at the Corrections Corporation of America (CCA) in Leavenworth, Kansas.  At the meeting Attorney McCauley informed me *for the first time* that I would be deported as a collateral consequence of my guilty plea and that, as a deportable alien, [I] would not be eligible for a one year sentence reduction upon completion of RDAP.

Third Jose Viera Declaration Dated May 16, 2011 at 15 (emphasis added), attached to Traverse To Government Response To Memorandum Of Facts And Law In Support Of Motion To Vacate, Set Aside, Or Correct Sentence (Doc. #184) filed May 20, 2011.

United States, exclusion from admission to the United States, and/or denial of naturalization." Petition To Enter Plea (Doc. #92) ¶ 14. Finally, in January of 2009, defendant waived a detention hearing in this matter because of a pending detainer from Immigration and Customs Enforcement ("I.C.E."). See Order Of Detention Pending Trial (Doc. #39) filed January 14, 2009 at 1; see also PSIR (Doc. #109) ¶ 2 (noting I.C.E. detainer against him). Defendant was not informed "for the first time" after sentencing that he would be deported.

In sum, defendant has not shown that absent counsel's alleged failure to advise him that he would be deported, he would have gone to trial.[10] The Court therefore overrules his first claim for relief.

## II.    Advice About Defendant's Eligibility For Sentence Reduction

Defendant argues that Mr. Duma was ineffective because he informed defendant that he

---

[10]    Padilla noted that "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." Padilla, 130 S. Ct. at 1483 (quoting INS v. St. Cyr, 533 U.S. 289, 323 (2001)). Padilla, however, had been a legal permanent resident of the United States for more than 40 years and served in the U.S. Armed Forces during the Vietnam War. 130 S. Ct. at 1477. Here, defendant is in the country illegally and at the time of his plea, he understood that as an illegal immigrant, he would have to report to I.C.E. after a prison term or in the event of an acquittal. See PSIR (Doc. #109) ¶ 99; see also id. at 2 (noting I.C.E. detainer). In light of the fact that defendant was already subject to deportation, he has not shown how he could have rationally rejected the plea agreement, proceeded to trial and subjected himself to a maximum term of life in prison. See United States v. Gutierrez–Martinez, No. 07–91(5)-ADM/FLN, 2010 WL 5266490, at *4 (D. Minn. Dec. 17, 2010) (no prejudice because defendant was illegal alien subject to deportation both before and after guilty plea); United States v. Perez, No. 02-cr-296, 2010 WL 4643033, at *3 (D. Neb. Nov. 9, 2010) (no prejudice where defendant subject to deportation without federal conviction at issue); cf. United States v. Orocio, --- F.3d ----, 2011 WL 2557232, at *11 (3d Cir. June 29, 2011) (reasonable for alien defendant, *especially legal permanent resident*, to go to trial, instead of pleading guilty to offense that carried "presumptively mandatory" removal); Song v. United States, No. Cr-98-0806-DOC, 2011 WL 2533184, at *4 (C.D. Cal. June 27, 2011) (reasonable probability that *lawful permanent resident* who provided principal means of financial support to U.S. citizen wife and two U.S. citizen children would have decided against pleading guilty had he been adequately apprised of immigration consequences).

would be eligible for a reduction in his sentence upon completion of RDAP.[11]  The Court need not evaluate whether Mr. Duma was deficient in this regard because defendant cannot establish prejudice.  Defendant has not shown a reasonable probability that but for counsel's prediction, the results of the plea proceeding would have been different, i.e. he would not have pled guilty and would have insisted on going to trial.  See Hill, 474 U.S. at 59; Clingman, 288 F.3d at 1186; Miller, 262 F.3d at 1068-69.

As with defendant's first claim, defendant has not shown that in light of the evidence against him, "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S. Ct. at 1485; see supra text at 4-5 (outlining evidence against defendant).  In addition, the record shows that eligibility for RDAP was not material to his decision to plead guilty.  At the plea hearing, the Court fully explained that the statutory maximum for his offense was life in prison and that counsel's predictions or assumptions could turn out to be incorrect and that any error by counsel might have a huge effect on his sentence.  See Transcript Of Change Of Plea Hearing at 8, 20-21.  The Court also advised defendant that except for a slight reduction in his sentence for good behavior, he would serve the entire amount of time of his sentence.  See id. at 28-29.  At the change of plea hearing, defendant admitted that no one had made any promise or guarantee about his sentence.[12]  Defendant also acknowledged that his plea was free and voluntary and that no one had

---

[11]     Under 18 U.S.C. § 3621(e), inmates who complete RDAP and meet certain other qualifications may receive a reduction in sentence of up to one year at BOP discretion.  The BOP categorically denies early release eligibility to inmates who are subject to I.C.E. detainers.  See 28 C.F.R. § 550.55(b)(1)(i).

[12]     In the plea petition, defendant also acknowledged as follows:

I declare that no officer or agent of any branch of government (federal, state, or local) has promised, suggested, or predicted that I will receive a lighter sentence, or probation, or any other form of leniency if I plead "GUILTY," except as follows:

(continued...)

forced or threatened him to enter it.[13]  See id. at 31.  After being informed about the statutory

maximum and the fact that counsel's assumptions could be wrong, defendant pled guilty.  Absent

a believable reason justifying departure from their apparent truth, the accuracy and truth of an

accused's statements at a Rule 11 proceeding at which his plea is accepted are conclusively

established.  United States v. Glass, 66 Fed. Appx. 808, 810 (10th Cir. June 3, 2003); United States

v. Jones, 124 F.3d 218, 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997); United States v.

Bambulas, 571 F.2d 525, 526 (10th Cir. 1978).

For these reasons, defendant was not prejudiced by counsel's inaccurate prediction that he

would be eligible for RDAP.[14]  The Court therefore overrules defendant's second claim for relief.

---

[12](...continued)
My attorney did discuss how the Sentencing Guidelines may apply in my case.

If anyone else, including my attorney, made such a promise, suggestion, or prediction, except as noted in the previous sentence, I know that he had no authority to do so.

Petition To Enter Plea (Doc. #92).

[13]    Defendant argues that his plea was not knowing or voluntary because of counsel's erroneous prediction of RDAP eligibility for early release.  Like an erroneous sentence estimate by counsel, however, such a prediction does not render a plea involuntary.  See United States v. Bridges, 68 Fed. Appx. 896, 900 (10th Cir. 2003) (plea voluntary; prediction of no more than 60 months, sentence of 175 months); Wellnitz v. Page, 420 F.2d 935, 936 (10th Cir. 1970) (plea voluntary; prediction of 25 years, sentence of 100 years); see also Fields v. Gibson, 277 F.3d 1203, 1213-14 (10th Cir. 2002) (plea voluntary when attorney advised that plea would lessen chance of death penalty and court nevertheless imposed death penalty); Stout v. United States, 508 F.2d 951, 953 (6th Cir. 1975) (plea not involuntary merely because prediction that guilty plea would result in light sentence did not come true).

[14]    In effect, defendant asserts that Mr. Duma made an erroneous sentencing prediction, i.e. one year less than that announced at sentencing.  An erroneous sentencing prediction is not prejudicial, however, where the Court has conducted an adequate Rule 11 colloquy.  See United States v. Kutilek, 260 Fed. Appx. 139, 147 (10th Cir. 2008) (no prejudice from attorney miscalculation in light of judge's statements at plea hearing); United States v. Hamilton, 510 F.3d 1209, 1216 (10th Cir. 2007) (same), cert. denied, 552 U.S. 1331 (2008); United States v. Shedrick,
(continued...)

### III.    Failure to File Motion To Withdraw Guilty Plea

Defendant argues that Mr. McCauley was ineffective because he did not file a motion to withdraw the guilty plea before sentencing based on ineffective assistance of counsel by Mr. Duma. As explained above, defendant has not shown that Mr. Duma rendered ineffective assistance. Moreover, defendant has not alleged sufficient facts to show that Mr. McCauley knew or should have known a "fair and just reason" to withdraw defendant's plea.[15]   See Fed. R. Crim. P. 11(d)(2)(B); United States v. Siedlik, 231 F.3d 744, 748 (10th Cir. 2000) (defendant bears burden to establish fair and just reason for withdrawal of plea).   Defendant has not shown that Mr. McCauley's performance was deficient or prejudicial.   The Court therefore overrules defendant's third claim for relief.

---

[14](...continued)
493 F.3d 292, 299-300 (3d Cir. 2007) (same); Gordon, 4 F.3d at 1571 (same); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990) (same), cert. denied, 499 U.S. 940 (1991); United States v. Cruce, No. 97-3167-DES, 1997 WL 557382, at *2 (D. Kan. Aug. 14, 1997) (same; prediction of 36-47 months, sentence of 168 months); United States v. Marsh, 733 F. Supp. 90, 93 (D. Kan. 1990) (same; prediction of three years, sentence of nine years).

[15]      In analyzing whether defendant has shown a fair and just reason for withdrawal, the Court ordinarily considers the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

United States v. Sandoval, 390 F.3d 1294, 1298 (10th Cir. 2004) (citations omitted).  Nearly all of the above factors would have weighed against allowing defendant to withdraw his plea.  In particular, defendant's delay in filing his motion, the prejudice to the government and the knowing and voluntary nature of defendant's plea would have weighed heavily against allowing defendant to withdraw his plea.

IV.     **Failure To File An Appeal As Instructed**

Defendant argues that Mr. McCauley was ineffective because he did not file an appeal as instructed.  The government argues that the waiver of collateral challenges in the plea agreement bars this claim.  On the government's motion to enforce waiver of collateral attack, the Court noted that the claim for failure to file an appeal appears to fall within the scope of the waiver.  See Memorandum And Order (Doc. #180) at 4.  Even so, the Court declined to enforce the waiver at that time because defendant's other claims challenged the voluntariness of his plea.  See id.  As explained above, defendant's first three claims lack substantive merit.  Accordingly, the Court now evaluates whether the waiver of collateral challenges in the plea agreement bars defendant's claim for failure to file an appeal.

A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence is generally enforceable.  United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); Cockerham, 237 F.3d at 1181; United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998).  The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.  United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

A.      Scope Of The Waiver

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement.  United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004); Hahn, 359 F.3d at 1328.  The Court construes the plea agreement according to contract principles and based on what defendant reasonably understood when he entered the plea.  United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004).  The Court strictly construes the

waiver and resolves any ambiguities against the government and in favor of defendant.  Hahn, 359

F.3d at 1343.

>    The plea agreement states in relevant part as follows:

>    **10.    Waiver of Appeal and Collateral Attack.**  The defendant knowingly
>    and voluntarily waives any right to appeal or collaterally attack any matter in
>    connection with this prosecution, the defendant's conviction, or the components of
>    the sentence to be imposed herein including the length and conditions of supervised
>    release.  The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the
>    right to appeal the conviction and sentence imposed.  By entering into this agreement,
>    the defendant knowingly waives any right to appeal a sentence imposed which is
>    within the guideline range determined appropriate by the court.  The defendant also
>    waives any right to challenge a sentence or otherwise attempt to modify or change his
>    sentence or manner in which it was determined in any collateral attack, including, but
>    not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by
>    *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion
>    brought under Title 18, U.S.C. § 3582(c)(2) and a motion under Fed. Rule of Civ.
>    Pro 60(b).  In other words, the defendant waives the right to appeal the sentence
>    imposed except to the extent, if any, the court departs upwards from the applicable
>    sentencing guideline range determined by the court.  However, if the United States
>    exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C.
>    § 3742(b), the defendant is released from this waiver and may appeal the sentence as
>    authorized by Title 18, U.S.C. § 3742(a).

Plea Agreement ¶ 10, attached to Petition To Enter Plea (Doc. #92).  The scope of this waiver

unambiguously includes the right to collaterally attack by a Section 2255 motion any matter in

connection with defendant's prosecution, conviction or sentence.  In Cockerham, the Tenth Circuit

noted that "a plea agreement waiver of postconviction rights does not waive the right to bring a

§ 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea

or the waiver," but that "collateral attacks based on ineffective assistance of counsel claims that are

characterized as falling outside that category are waivable."  237 F.3d at 1187.

>    Here, except as limited by Cockerham, i.e. except for claims challenging the validity of the

plea or waiver, defendant specifically waived his right to raise any collateral challenge in connection

with his prosecution, conviction and sentence.  Because defendant's fourth claim (failure to file an

appeal) does not challenge the validity of the plea or waiver, it falls within the scope of the waiver in the plea agreement.  See id.

The Court recognizes that a waiver of *appeal* in the plea agreement does not bar a claim that counsel was ineffective for refusing to file an appeal despite his client's specific instructions to do so.[16]  On a motion to vacate sentence under Section 2255, however, the issue is whether such a claim can overcome a valid waiver of *collateral challenges*.  As explained above, a valid waiver of collateral challenges in the plea agreement waives the right to bring a Section 2255 motion except for ineffective assistance claims which challenge the validity of the plea or the waiver.  See Cockerham, 237 F.3d at 1187.  Defendant's claim that counsel failed to file an appeal does not challenge the validity of the plea or waiver.[17]

In United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005), defendant waived his right to appeal or collaterally challenge his guilty plea, or any aspects of his conviction and sentence –

---

[16]     Where a lawyer disregards specific instructions to file a criminal appeal, counsel is deemed to have acted in a manner that is both professionally unreasonable and presumptively prejudicial.  See Flores-Ortega, 528 U.S. at 477, 484-85; United States v. Snitz, 342 F.3d 1154, 1155-56 (10th Cir. 2003).  If defendant requests an appeal, counsel must file a timely notice of appeal. If counsel believes after conscientious examination that an appeal is wholly frivolous, he must file a motion to withdraw and an accompanying brief under Anders v. California, 386 U.S. 738 (1967).

[17]     See United States v. Falcon-Sanchez, 416 Fed. Appx. 728, 730 (10th Cir. 2011); United States v. Macias, 229 Fed. Appx. 683, 687 (10th Cir. 2007); United States v. Davis, 218 Fed. Appx. 782, 784 (10th Cir. 2007); United States v. Hogan, Nos. Civ-09-430-JHP, CR-08-027-JHP, 2010 WL 2594665, at *3 (E.D. Okla. June 23, 2010); United States v. Williams, No. 06-40132-01-JAR, 2010 WL 1710578, at *5 (D. Kan. Apr. 26, 2010), cert. of appealability denied, Doc. #257 in D. Kan. No. 06-40132-01-JAR (10th Cir. Dec. 6, 2010), available electronically through PACER, www.pacer.gov (district court resolution of Section 2255 motion not reasonably subject to debate); United States v. Olden, No. 04-cr-071-TCK, 2009 WL 2922989, at *2 (N.D. Okla. Sept. 9, 2009); see also United States v. Mabry, 536 F.3d 231, 239-42 (3d Cir. 2008) (even if counsel obliged to file direct appeal, waiver of collateral review bars relief); Lewis v. United States, No. 08-2084-PHX-DGC, 2009 WL 4694042, at *5 (D. Ariz. Dec. 4, 2009) (Flores-Ortega does not address enforceability of waiver of collateral attack rights).

including the manner in which the sentence was determined.  402 F.3d at 1263 n.2.  In dicta, the

Tenth Circuit noted that the government did not attempt to enforce the waiver of collateral attacks

but that the plain language of the waiver did not address a claim that defendant's attorney did not

appeal despite specific instructions to do so.  See id. at 1266 n.5 (citing United States v. Anderson,

374 F.3d 955, 957 (10th Cir. 2004)).  Here, the waiver in the plea agreement covers any matter in

connection with defendant's prosecution, conviction and sentence and specifically covers motions

brought under 28 U.S.C. § 2255.  See Plea Agreement ¶ 10.  As to Section 2255 motions, the waiver

contains an exception only under Cockerham for claims challenging the validity of the plea or waiver.

Here, the broad waiver of Section 2255 claims precludes a claim that counsel was ineffective for

failing to file an appeal despite defendant's instructions to do so.  See United States v. Shaw, 292

Fed. Appx. 728, 733 n.4 (10th Cir. 2008) (O'Brien, J., concurring) (distinguishing Garrett and noting

that collateral challenge waiver in plea agreement would bar claim that counsel was ineffective for

not filing appeal); Macias, 229 Fed. Appx. at 687 n.9 (distinguishing Garrett and enforcing collateral

challenge waiver as to claim that counsel failed to consult defendant about appeal); Davis, 218 Fed.

Appx. at 784 (claim that counsel failed to file appeal does not go to validity of plea or waiver and

is therefore barred by waiver).[18]

---

[18]        Garrett is based on the premise that a plea waiver of the right to appeal – while significantly limiting what issues can be appealed – does not "foreclose all appellate review" of a sentence.  Garrett, 402 F.3d at 1266-67.  In contrast, a broad waiver of collateral challenges waives collateral review of all issues except for those which are specifically preserved under Cockerham, that is challenges to the validity of the waiver itself.  Accordingly, a waiver of collateral challenges generally waives claims of ineffective assistance that pertain to conduct by counsel after entry of the plea agreement.  See Cockerham, 237 F.3d at 1188 (sentencing-related claim of ineffective assistance of counsel waived because not reasonably characterized as attack on validity of plea).  Garrett did not attempt to distinguish or otherwise question Cockerham's conclusion that claims of ineffective assistance of counsel that pertain to post-plea conduct by counsel may be waived.

B.      Knowing And Voluntary Nature Of The Plea

To ascertain whether defendant knowingly and voluntarily waived his rights, the Court evaluates the language of the plea agreement and the plea petition, and the Rule 11 colloquy.  Hahn, 359 F.3d at 1325.  The Court conducted a thorough inquiry at the plea hearing.  At that time defendant affirmed that he understood the charge against him, the maximum prison term of life, the rights which he was waiving and the factual basis for his plea.  Defendant acknowledged that he understood the waiver of appeal and collateral challenges.  Transcript Of Change Of Plea Hearing at 27.  Defendant acknowledged that his plea was free and voluntary, that no one had forced or threatened him to enter it and that the only reason he was making a plea was that he was in fact guilty as charged.  Nothing in the record suggests that defendant's plea or waiver of post-conviction rights was unknowing or involuntary.  In sum, the language of the plea agreement and the Rule 11 colloquy established that defendant's waiver of his rights was knowing and voluntary.

C.      Miscarriage Of Justice

The Court must "determine whether enforcing the waiver will result in a miscarriage of justice."  Id. at 1327.  This test is not met unless (1) the district court relied on an impermissible factor such as race; (2) defendant received ineffective assistance of counsel in conjunction with negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity or public reputation of judicial proceedings.  Id.  Defendant bears the burden of demonstrating that the waiver results in a miscarriage of justice.  Anderson, 374 F.3d at 959.

The Court finds that enforcement of the waiver does not implicate any of the four factors listed above.  In particular, defendant received a sentence of 324 months in prison, which is less than the statutory maximum of life in prison.  See United States v. Green, 405 F.3d 1180, 1193-94 (10th

Cir. 2005); United States v. Porter, 405 F.3d 1136, 1144 (10th Cir.) (under Hahn, "statutory maximum" refers to statute of conviction), cert. denied, 546 U.S. 980 (2005).   Furthermore, enforcement of the waiver as to collateral challenges does not seriously affect the fairness, integrity or public reputation of the proceedings.  See United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir.) (waiver of appellate rights enforced where sentence did not exceed statutory maximum and was based on judge-made findings), cert. denied, 546 U.S. 989 (2005).  The Court finds that enforcing the waiver will not result in a miscarriage of justice.  In sum, the waiver of collateral challenges in the plea agreement bars defendant's fourth claim.

**V.      Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which are not directly refuted by the record or if true, would entitle him to relief.  Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Kilpatrick, 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where factual matters raised by Section 2255 petition may be resolved on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

**VI.     Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2).[19]  To satisfy this standard, the movant must demonstrate

that "reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v.

Dretke, 542 U.S. 274, 282 (2004)).  For reasons stated above, the Court finds that defendant has not

made a substantial showing of the denial of a constitutional right as to his first three claims.  As to

defendant's fourth claim, however, because of some uncertainty as to the effect of a waiver of

collateral challenges on an ineffective assistance claim based on counsel's failure to file an appeal

despite a defendant's instructions to do so, the Court grants a certificate of appealability on that

particular issue.[20]

---

[19]     The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[20]     As stated above, in dicta, Garrett noted that the plain language of the waiver in the plea agreement did not preclude a claim that counsel did not file an appeal as directed.  The waiver in Garrett, however, was quite broad and included a waiver of appeal or collateral challenges as to the "guilty plea and any other aspects of [defendant's] conviction" and the "sentence imposed by the Court and the manner in which the sentence is determined." Garrett, 402 F.3d at 1263 n.2. Garrett suggests that a waiver must be more specific to include a claim related to failure to file an appeal as requested. See Mabry, 536 F.3d at 240 (Garrett analyzed issue as if only appellate waiver existed and dismissed collateral attack waiver in footnote because "plain language of the waiver does not address the type of claim he has raised," seemingly imposing a requirement of heightened particularity in waivers of collateral proceedings).  In several unpublished opinions, however, the Tenth Circuit has enforced a broad, non-specific waiver of collateral attacks as to claims that counsel failed to file an appeal as requested. See Falcon-Sanchez, 416 Fed. Appx. at 730; Shaw, 292 Fed. Appx. at 733 n.4; Macias, 229 Fed. Appx. at 687 n.9; Davis, 218 Fed. Appx. at 784.  Even so, in at least one unpublished opinion, the Tenth Circuit has reached a different result, see United States v. Lauer, 236 Fed. Appx. 462, 463-65 (10th Cir. 2007) (vacating dismissal of Section 2255 motion and remanding for hearing to determine whether defendant asked counsel to file appeal) (vacated Order, Doc. #85 filed Sept. 14, 2006 in W.D. Okla. No. 04-cr-00206-HE, which held that plea waiver of collateral challenges barred claim that attorney failed to file appeal as requested), available electronically through PACER, www.pacer.gov. In Falcon-Sanchez, the Tenth Circuit distinguished Garrett, but as an unpublished opinion, Falcon-Sanchez does not conclusively resolve the issue. See Falcon-Sanchez, 416 Fed. Appx. at 730.

**IT IS THEREFORE ORDERED** that defendant's <u>Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody</u> (Doc. #172) filed October 29, 2010 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** as to defendant's claim that counsel was ineffective because he did not file an appeal despite defendant's specific instructions to do so.  The Court **DENIES** a certificate of appealability as to defendant's remaining claims.

Dated this 4th day of August, 2011 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge